# In the Matter of the Estate of PEDRO P. PEQUENO, Deceased.

Surrogate's Court, Kings County, September 18, 1941.

*Lester Lewis Jay*, for Rachelle N. Ducas, petitioner.

*Frederick W. Scholem*, for Peter Pequeno, respondent.

WINGATE, S. This is a motion to vacate an order, secured *ex parte*, for the examination of the respondent, Peter Pequeno. The petitioner is an alleged creditor of the respondent's deceased father, Pedro P. Pequeno, who is asserted to have died on March 29, 1941. The stated object of the inquisition is " to ascertain the names and addresses of the next of kin of the deceased entitled to be cited upon an application for an appointment of an administrator, the names and addresses of the creditors of the deceased," and the value of the real and personal property owned by him at the time of his death, for inclusion in a petition for the issuance of letters of administration upon the estate. The respondent asserts that such an examination lacks legal authorization.

It is a familiar principle of law that no right of pre-trial inquisition exists except in those instances in which it is expressly accorded by

some identifiable statute. " The right  *  *  * to have the examination  *  *  * is strictly statutory. Independent of the statute, there is no such right. The court has no inherent or common law power to order the examination." (*Heishon* v. *Knickerbocker Life Ins. Co.*, 77 N. Y. 278, 279; to like effect, see *Woods* v. *Barton*, 226 App. Div. 38, 39; *Matter of Schlotterer*, 105 id. 115, 118; *Mitchell* v. *Schroeder*, 94 Misc. 270, 280.) The burden is consequently imposed upon the petitioner to point to some identified statute which authorizes such an examination under the facts and circumstances here disclosed. In attempted compliance with this obligation, he points to section 295 of the Civil Practice Act and rule 123 of the Rules of Civil Practice.

The former was new in the Civil Practice Act but its germ was contained in sections 870 and 871 of the Code of Civil Procedure. These read:

" § 870. Deposition of a party  *  *  *. The deposition of a party to an action pending in a court of record, or of a person who expects to be a party to an action about to be brought in such a court may be taken at his own instance or at the instance of an adverse party, or by a coplaintiff or codefendant at any time before or during the trial as prescribed in this article."

" § 871. Deposition of a witness not a party. The deposition of a person not a party, whose testimony is material and necessary to a party to an action, pending in a court of record, or to a person who expects to be a party to an action about to be brought in such a court, by a person other than the person to be examined, may also be taken, as prescribed in this article."

During the period in which these enactments were in effect many efforts were made to employ them, prior to the actual institution of an action or proceeding, for the purpose either of ascertaining whether a prospective plaintiff possessed a valid cause of action or to learn the identity of the proper defendants in an action the institution of which was contemplated. These endeavors met with substantially uniform failure, except where the object of the examination was strictly confined to the perpetuation of the testimony of the examinee and even in such situation it was observed by the Court of Appeals (*Merchants' National Bank* v. *Sheehan*, 101 N. Y. 176, 179) that " it can rarely happen that justice will be promoted by granting an order on the application of a proposed plaintiff, before the commencement of an action, and the practice, unless carefully guarded, may lead to great abuses."

Typical of the denials of such attempts to extend the scope of the remedy beyond the mere perpetuation of testimony is the statement in *Matter of Moto Bloc Import Co.* (140 App. Div. 532, 534):

" The rule, however, has been consistently adhered to in this department that an examination will not be allowed for the purpose of discovering who is liable on a cause of action shown to exist in favor of the applicant." (To like effect, see *Ziegler* v. *Lamb*, 5 App. Div. 47, 48; *Matter of Anthony & Co.*, 42 id. 66, 67, 68; *Matter of White*, 44 id. 119, 120; *Bloodgood* v. *Slayback*, 54 id. 634; *Matter of Schoeller*, 74 id. 347, 348; *Matter of Ellett* v. *Young*, 95 id. 417, 420.) In the last-cited case the court observed that the Code authorization " clearly limits the right to the examination of a person expected to be an adverse party, when no action has been brought, to a case where such an examination is necessary to perpetuate the testimony of the witness."

The foregoing cases all arose in the First Department. An early contrary decision in the Third Department is found in *Matter of Nolan* (70 Hun, 536), in which examination of a mine superintendent was permitted by the administratrix of a deceased workman to ascertain the identity of the owner responsible for the death of her intestate, and a result somewhat difficult of reconcilement with the First Department rule was attained in the Second Department in *Matter of Weil* (25 App. Div. 173, 174), although neither the decision nor result is reasonably construable as a repudiation of the principles there announced. However this may be, the learned justices of the Appellate Division for the Second Department in *Long Island Bottlers' Union* v. *Bottling Brewers' Protective Assn.* (65 App. Div. 459, 460) expressly voiced adherence to the First Department rule as stated in *Matter of Anthony & Co.* (*supra*), and in *Matter of Schlotterer* (*supra*, 118) unequivocally held that the effect of the Code provisions " was to limit the examination of an expected party to a case where such examination was sought for the purpose of perpetuating testimony." It accordingly reversed an order granting an examination of prospective defendants secured, when no action was already pending, for the purpose of enabling the applicant to prepare a complaint.

It, therefore, appears that in the First and Second Departments, at least, no preliminary examination was permissible under the Code of Civil Procedure to a prospective plaintiff to enable him to frame his complaint or to ascertain the identity of prospective opponents.

In the superseding enactment now contained in section 295 of the Civil Practice Act considerable verbal changes were made. This reads:

" § 295. Testimony by deposition before action is commenced. Testimony which is material to an expected party in the prosecution or defense of an action about to be brought in a court of record

may be taken at his instance, by deposition, if the taking or preservation thereof is necessary for the protection of his rights * * *."

So far as the research of the court has disclosed, this enactment has been passed upon in a connection here pertinent on five occasions only. Four of these decisions arose in Erie county which, of course, is located in the Fourth Department, namely, in *Matter of Titanium Alloy Mfg. Co.* (198 N. Y. Supp. 503, 504); *Lauffer* v. *Eastern Star Temple* (210 App. Div. 619); *Matter of Silverberg* (153 Misc. 126; affd., 243 App. Div. 854) and *Matter of Universal Film Exchanges* (160 Misc. 416). The doctrine of all is obviously the same, being controlled by the pronouncement of the Appellate Division for the Fourth Department in the *Lauffer* case, and is to the effect that " a person claiming to have a legal right and remedy can thus have such an examination before trial for the sole purpose of identifying the defendant." (*Lauffer* v. *Eastern Star Temple, supra,* 620.) The gist of the decision (p. 622) is: " First, it is to be observed that the words ' if the taking or preservation thereof is necessary for the protection of his rights ' and all the remainder of the section are not found in the Code of Civil Procedure, sections 870 and 871. Next, it is to be observed, the words ' taking or preservation ' are used to clearly indicate a provision for something besides ' preservation; ' something more than an examination *de bene esse.* So it seems clear that, although the word ' testimony ' is used instead of the word ' information ' (for an expected party to a proposed action), this does not require any conclusion that perpetuation only is contemplated."

In *Matter of Hufstutler* (220 App. Div. 587) the Appellate Division for the First Department, after noting the *Lauffer* case, expressly repudiates its conclusion, saying (p. 590): " It seems apparent to us from the failure to change the provisions of the former Code that it was the legislative intent to limit examinations before suit started to perpetuating the testimony of a witness whose testimony could not otherwise be obtained."

In view of this conflict in the decisions of the Appellate Divisions of other departments and the absence of any pronouncement on the subject by that of the Second Department, it becomes the obligation of this court to select that alternative of these divergent views which it conceives to be correct and more consonant with the public interest. In the course of this evaluation, the court deems the language of rule 123 of the Rules of Civil Practice, which was adopted for the purpose of supplying the machinery for the effectuation of section 295 of the Civil Practice Act, to be pointedly suggestive of the correct result.

Whereas it is, of course, true that a rule which is inconsistent with a duly enacted statute is of no effect (*People ex rel. Mayor* v. *Nichols*, 79 N. Y. 582, 592), and that any such regulation cannot enlarge or abridge rights conferred by a statute (*Moot* v. *Moot*, 214 N. Y. 204, 211; *Broome County Farmers' Fire Relief Assn.* v. *New York State Electric & Gas Corp.*, 239 App. Div. 304, 306; affd., 264 N. Y. 614), it is nevertheless accepted law that "the rules of courts are made under special statutory authority, and when made, have the force and effect of statutes" (*Matter of Moore*, 108 N. Y. 280, 281), and are binding upon those tribunals to which they apply. (*Matter of Wills*, 162 App. Div. 775, 776.) Particularly is this true of the present Rules of Civil Practice which have been promulgated pursuant to the approval of "a majority of the justices of the Appellate Division in the four departments." (Judiciary Law, § 82.) It follows that any reasonably clear intimation discernible from such rules is controlling upon the action of any judge at *nisi prius*.

Rule 123, which is the only one included in the enumeration which may be deemed applicable to the present situation, reads as follows:

"Rule 123. Proof on application for order to perpetuate testimony for future action. On an application for an order allowing testimony to be taken by deposition for use in an action about to be brought in a court of record, the applicant shall present to the court in which the action may be brought an affidavit setting forth the nature of the controversy which is expected to be the subject of the action and the circumstances which render it necessary for the protection of the applicant's rights that the witness's testimony be perpetuated."

The dual reference, in the title and the final sentence of the text, to "perpetuation" of testimony, when read in the light of the pronouncements hereinbefore reviewed is extremely persuasive of the belief that the sole purpose of the remedy in question is, as the title states, "to perpetuate testimony," which is the interpretation adopted by the Appellate Division for the First Department and that it does not authorize a wholly unrestrained delving into the legal possibilities of precipitating some sort of litigation or ascertaining the identity of persons against whom suit may possibly be brought.

It is accordingly the conclusion of the court that both as a matter of statutory construction, and in the public interest for the avoidance of an extension of the "great abuses" envisaged by the Court of Appeals in the *Merchants' National Bank* case (*supra*), the conclusion of the Appellate Division for the First Department is preferable for adoption, namely, that section 295 of the Civil Practice

Act authorizes the taking of a deposition prior to the actual institution .of an action or proceeding only in situations in which this course is essential for the perpetuation of the testimony of the person to be examined.

Whereas this conclusion appears correct in any case, it seems especially clear in the situation of the present variety. The remedy by deposition is made available under the language of section 295 of the Civil Practice Act only subject to the expressly stipulated condition: " if the taking or preservation thereof is necessary for the protection of his [the applicant's] rights." The sole ultimate right of the present petitioner is to receive payment of her claim, if it be found to be justly owing. To this end, the issuance of letters of administration is a convenient preliminary although on the situation disclosed in the record it would appear that the applicant's rights might effectively be enforced pursuant to the provisions of article 7 of the Decedent Estate Law.

However this may be, exact advance information respecting the assets of the estate or of the identity of statutory distributees is an essential condition precedent neither for a petition for probate nor one for administration. Service by publication upon unknown distributees is a familiar and habitually employed method of securing jurisdiction in the Surrogate's Court. It follows that advance ascertainment of the identity of such distributees is not " necessary for the protection " of the applicant's rights.

For both of the reasons assigned, the order for examination of the respondent at which the present complaint is directed is determined to be without legal basis and the motion for its vacatur will be granted.

Enter order on notice in conformity herewith.